IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SYLVESTER CUNNINGHAM , | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.   15-cv-260-MJR-SCW |
| | ) |
| JAMES CROSS, POLLMAN, | ) |
| ELIZABETH MILLS, and DOUGLAS | ) |
| KRUSE, | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

WILLIAMS, Magistrate Judge:

INTRODUCTION

This case is before the Court on Plaintiff's motion for preliminary injunction (Doc. 1) as set forth in Plaintiff's original complaint (Doc. 1) and the Court's threshold order (Doc. 7).  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is RECOMMENDED that the District Court ADOPT the following findings of fact and conclusions of law, and DENY Plaintiff's motion for preliminary injunction.

FINDINGS OF FACT

A.  Procedural Background

Plaintiff, an inmate currently housed at FCI-Greenville, filed this case pursuant to *Bivens v. Six Unknown Named Agents*, **403 U.S. 388 (1971)** alleging that Defendants

were deliberately indifferent to his serious medical condition (Doc. 1).   Plaintiff did not file a complaint, but instead, on March 9, 2015 filed an emergency motion for injunctive relief (Doc. 1).   The district court, however, construed the motion as a complaint given that it recited the factual allegations and set forth constitutional claims.   In its threshold order, the district court construed the complaint as one for deliberate indifference. Plaintiff's complaint alleged that in 2006, prior to his incarceration, Plaintiff was shot in the chest and paralyzed, leaving Plaintiff dependent on a wheelchair for mobility (Doc. 7, p. 2).   Prior to his incarceration, Plaintiff was receiving physical therapy three times per week and used leg braces as part of his therapy (*Id*. at p. 2-3).

Plaintiff entered the custody of Greenville on November 6, 2013.   He informed Pollman, a health services administrator at Greenville, and Defendant Kruse, clinical director, of his need for physical therapy (Doc. 7, p. 3).   Kruse informed him that Greenville was a "Care Level II" facility which did not provide physical therapy, nor could Plaintiff obtain therapy from an outside source.   Plaintiff was informed that he would be provided with a physical therapy consultation.   Plaintiff requested transfer to a "Care Level III" facility where he could receive physical therapy but Pollman denied the recommendation for transfer and the physical therapy consultation (*Id*. at p. 3). While he has been at Greenville he has never received physical therapy.

In November of 2013 Plaintiff told Defendant Mills that he was experiencing muscle spasms and chest and back pains stemming from the area of his gunshot wound (Doc. 7, p. 3).   On December 17, 2013, he informed Mills that although he was provided

with multiple medications, the meds were not relieving his pain.   He told Mills that the only medication which helped his pain was Lyrica.   But Mills, allegedly, did not give Plaintiff any pain medication (*Id*. at p. 3).   He also requested different medication on March 21, 2014 and June 3, 2014 for his pain but never received it (*Id*. at p. 3-4).   In addition to requesting different pain medication, he has also requested transfer to a medical facility where he could obtain physical therapy.   He asked for a transfer on January 8, 2014, March 21, 2014, June 3, 2014, September 18, 2014, and December 30, 2014 but Kruse and Pollman either denied his transfer or failed to even respond (*Id*. at p. 4). Kruse and Pollman, according to Plaintiff, must recommend physical therapy or transfer in order for Plaintiff to receive that specific relief but they have not.   Plaintiff also made requests in September and December 2014 to Kruse and Pollman for new leg braces as he experiences muscle spasms with his current set, but he has received no response (*Id*.). Plaintiff alleges that he needs leg braces in order for Plaintiff to exercise and Mills recommended that he exercise to alleviate his condition (Doc. 7, p. 7).

As part of his request for preliminary injunction, Plaintiff requests either a transfer to a Care Level III facility or to be provided with physical and occupational therapy.   In light of the medical concerns presented by Plaintiff's complaint, the undersigned set this matter for an evidentiary hearing.

## B.  Preliminary Injunction Hearing

On October 30, 2015, the undersigned held an evidentiary hearing on Plaintiff's motion for preliminary injunction.

### 1. *Plaintiff's Testimony*

Plaintiff testified first about the remedies that he seeks in his motion.   While Plaintiff initially argued in his motion that he suffered from pressure sores, he testified that his pressure sores have been dealt with and healed so that is no longer an issue. The only issues which remain are Plaintiff's claims that he needs physical therapy and that the pain medication he is being given is ineffective.

Plaintiff first testified that he has sought physical therapy several times while at Greenville.   He is paralyzed from the chest down and believes that he needs physical therapy to get exercise and to possibly walk again.   Plaintiff was practicing his own physical therapy with the use of his leg braces.   He walks around on the basketball court with his leg braces and walker, but he fell on August 2, 2015.   Plaintiff believes that he will need physical therapy for the rest of his life and he seeks to be transferred to a Level III facility where he can receive more physical therapy and medical care.   He acknowledges that no doctor has told him that he needs physical therapy for the rest of his life nor has he been prescribed a specific type of physical therapy.

He has been unable to exercise since his leg braces broke in September.   He seeks to have his leg braces repaired.   Plaintiff also indicates that he needs help to stretch his legs as he cannot provide a full range of motion stretch on his own.   These stretches help keep his leg muscles from tightening up.   To perform the stretches, Plaintiff testified that he would need an assistant who would take his legs and move them in a running fashion and spread them apart so that they do not tighten up.   Plaintiff testified

that he has not put in a request to have an assistant perform stretches as he previously put in a request for an assistant to help him in his wheelchair but that request was denied.   He believed that since his request for an assistant was denied that all requests for any type of assistance would be denied.   Without physical therapy he does not know whether the exercises he is currently doing are being done properly.

Plaintiff also testified that he believes he needs physical therapy to help reduce muscle spasms.   Plaintiff testified that his former treating physician, which he saw for the two years following his paralysis, from 2006-2008, indicated that physical therapy would help with muscle spasms.   Plaintiff acknowledged that he has been given medication for the muscle spasms.   BOP provided Plaintiff with a non-formulary medication to treat muscle spasms.   He believes that there is a remote chance that he would be able to stand with back and leg braces if he participates in physical therapy.

Plaintiff also testified that he is having trouble with his pain medication. Plaintiff testified that he stopped taking his pain medication because it was not helping with his pain.   He was taking Baclofen once a day and Lyrica twice a day.   He took the medication for three weeks but it did not help his pain so he stopped taking it two weeks prior to the hearing.   He had been on both drugs before arriving at Greenville.   He also takes Naproxen when he has a lot of pain but tries not to take much medication because it irritates his stomach.

Plaintiff testified that he experiences pain from his chest to his back.   The two medications he was previously prescribed did not help with the pain and only irritated

his stomach.   He recently signed a waiver indicating his refusal to take the medication due to the stomach pain.   While the medication hurts his stomach, he testified that he would take the medication if it cut his pain.   He also experienced issues with getting his pain medication renewed.   Plaintiff testified that when his medication ran out, it would take a few days to get the prescription renewed.   It does not automatically refill.

### 2. *P.A. Elizabeth Mills*

P.A. Elizabeth Mills also testified about Plaintiff's treatment at Greenville.   Mills has worked for five years at Greenville and sees Plaintiff in medical every few weeks. Mills is familiar with the medication that Plaintiff is prescribed for muscle spasms and pain.   When Plaintiff arrived at Greenville, he was already prescribed Baclofen.   He was also prescribed Lyrica for nerve pain.   Mills acknowledged that his medication did not receive an automatic refill as the medication is taken in line or is a controlled substance.   Such medication must be renewed every 30 days with a refill request but any delay in refilling the medication is very short.

Mills testified that Plaintiff does not take his medication consistently and as prescribed.   She has discussed his noncompliance with his medication schedule on several occasions.   Mills testified that since Plaintiff does not take the medication consistently it is hard for her to determine if the medication is adequately controlling his pain.   Plaintiff does not take his morning dose of medication because he does not like to get up early for the pill line.   Thus, Plaintiff only receives one dose of pain medication in the afternoon.   Mills told Plaintiff that if he would take two doses, as prescribed, the

medication would be more effective.   But while Plaintiff complained about his pain medication not working, he continued to only take one dose.

As to Plaintiff's complaints about physical therapy, Mills testified that there is no physical therapist at Greenville, but that Plaintiff was evaluated for physical therapy when Plaintiff first arrived at the prison.   The healthcare unit also sought records for his previous physical therapy, but was unable to find any records from when he was in state prison.   Mills acknowledged that Plaintiff cannot obtain physical therapy at Greenville because it is a Level II facility.   If Plaintiff needs therapy then he must be transferred to a Level III facility.   A request was made for Plaintiff to be transferred to a Level III facility in 2013 because Plaintiff had a pressure sore.   That request, however, was denied by BOP department of medical designations, which the medical records reflect.

Mills also testified that Plaintiff discussed the issue with his leg brace.   He had previously left the braces with an assistant who has since left the prison.   Plaintiff was complaining that the braces did not fit properly.   Mills found the braces in medical and has since requested that Plaintiff be sent out for a fitting which was approved by BOP. Mills is now waiting for an appointment from the outside provider so that Plaintiff's braces can be repaired.   Mills testified that with the braces, Plaintiff cannot walk, but can swing his legs back and forth with the use of both the braces and a walker.

### 3. *Dr. Kruse*

Dr. Kruse is the clinical director at Greenville.   He is a family practitioner and was in private practice for eleven years prior to coming to Greenville four years ago.

Kruse testified that he requested a transfer for Plaintiff to a Level III facility due to Plaintiff having a pressure sore.   Plaintiff also asked for stem cell therapy which cannot be done at Greenville.   While Kruse did not believe that Plaintiff needed physical therapy, he also included that request in his transfer request as a request for a second opinion.   The request for transfer was denied.

Kruse testified that he did not believe that Plaintiff would benefit from physical therapy due to the state of his paralysis and the length of time that Plaintiff has been paralyzed, seven years.   Kruse testified that the chances of obtaining any type of function after that length of time were very small.   Kruse acknowledged that physical therapy could help if Plaintiff's muscles were tightening but Plaintiff does not experience that issue.   His medical records indicate that he has full range of motion and is able to straighten his legs with the braces, which indicates that he is not suffering from muscle tightness.   Kruse also testified that medical records from 2015 indicated that he does not have any contractions in his muscles.

Kruse testified that they are in the process of having Plaintiff's braces fixed so that they fit properly.   Once those are repaired, Plaintiff will be able to ambulate in the same fashion as he previously was moving with his braces and walker.   Kruse does not believe that Plaintiff qualifies for any additional physical therapy.   If Plaintiff was having muscle contractions or his legs were tightening he might need physical therapy but he does not have those problems at this time.

### 4. *Medical Records*

At the close of the hearing, the undersigned noted that it did not have a copy of the medical records and directed the defense to provide the Court with the medical records for review. The undersigned has sense obtained copies of the relevant medical records. The records indicated that on October 23, 2015, Plaintiff signed a paper refusing the medications Baclofen and Lyrica (Doc. 38-1, p. 1). At that time, Plaintiff was warned that failure to take the medication may result in worsening pain and muscle spams (*Id.*).

The medical records also indicate that Plaintiff met with P.A. Mills on October 21, 2015 about his leg braces. The braces were not fitting anymore and the Velcro would not hold tight. He believed his legs had gotten bigger which prevented the Velcro from holding around his legs. A request was put in to set up an appointment with the prosthetics company for a refitting. The target date for the appointment is December 2015.

The medical records also indicate that Plaintiff was directed to take his medication twice daily. There are also notes in the records which indicate that Plaintiff was not taking the doses as prescribed. An entry from August 24, 2015 indicates that he was only taking Lyrica once a day and that he was not compliant with morning doses of the medication. That same day, Elizabeth Mills discussed with him the necessity of taking his medication twice a day to better control his pain. Plaintiff agreed to try the morning pill again, but an entry from September 4, 2015 indicates that he had only taken

two doses of the Lyrica in the morning and had missed that morning's dose.  The August 24, 2015 entry also indicates that Plaintiff did not want take Baclofen twice a day.

CONCLUSIONS OF LAW

### A. Preliminary Injunction Standard

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest.  *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010) (citing** *Winter*, **555 U.S. at 20).**  The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted."  *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power.  The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).**  Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct

the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. ***Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. ***Id*. (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

### B. Analysis

#### 1. *Transfer to a Level III Facility*

Plaintiff's request for injunctive relief seeks a transfer to a Level III facility. Plaintiff's complaint sought a transfer both for the purposes of caring for a pressure sore and so that Plaintiff could obtain physical therapy. As to the pressure sore, the undersigned notes that issue has since been resolved. The medical records indicate that a transfer to a Level III facility in order to treat Plaintiff's pressure sore was requested by

Dr. Kruse, but was ultimately denied by BOP office of medical designations because Plaintiff did not meet the criteria and his wound could be cared for at the prison with consultation from a BOP wound care specialist.   Dr. Kruse testified, and Plaintiff acknowledged, that Plaintiff's pressure sore has since healed and that he no longer suffers from the sore.   Thus, the need for a transfer for purposes of treating the sore is now moot.

Plaintiff also requested a transfer to a Level III facility so that he might obtain physical therapy for his paralysis.   Plaintiff stated in his complaint that he was initially told there was a remote chance that he could stand with the use of back brace and leg braces with physical therapy, although he would not have functional skills.   Plaintiff acknowledged that he has not seen the doctor who recommended the therapy to him since 2008 and he has not had physical therapy since 2012.   Plaintiff testified that he is able to exercise with his leg braces by using a walker and swinging his legs back and forth, using his legs as a crutch to move around the prison yard.

Dr. Kruse testified that physical therapy cannot be conducted at Greenville as it is a Level II facility and that Plaintiff would have to be transferred to a Level III facility to receive physical therapy.   Kruse testified that he believed that Plaintiff would not benefit from physical therapy due to the extent and length of time of his paralysis. Plaintiff has been paralyzed for over seven years.   While Kruse noted that physical therapy might help with muscle tightening, Plaintiff does not have any symptoms of muscle tightening and he is able to straighten his legs completely with the use of his leg

braces.  Even though Kruse did not believe that physical therapy was necessary, he sought a second opinion by requesting a transfer to a Level III facility for physical therapy which was denied by the office of medical designations.

Here, the undersigned finds that Plaintiff's request for transfer to a Level III facility is not warranted at this time.  While the undersigned acknowledges that medical opinions might differ as to whether physical therapy or exercise would be helpful for long-term paraplegic individuals like Plaintiff, Plaintiff has offered no evidence, other than his own opinion, that physical therapy is needed in this case. Plaintiff testified that he was told several years ago by a treating physician that physical therapy might be helpful but, even then, there was only a remote chance that he could stand with braces.  He was, admittedly, not told that he would develop any functional skills (Doc. 1, p. 4).   And the evidence indicates that Plaintiff does stand and is able to exercise on the prison yard with the use of his leg braces.   While he does not have braces at this time, as discussed below, Defendants are working on obtaining braces that fit Plaintiff properly so that he may continue with his exercise.    But Plaintiff has offered no evidence to show that structured physical therapy would provide him with any further benefits or is medically necessary.   Dr. Kurse testified that he did not believe, in his medical opinion, that physical therapy would be beneficial to Plaintiff and his decision was backed for BOP's medical designations officer.   The undersigned, thus, finds no evidence at this time which would entitle Plaintiff to the transfer he seeks and **RECOMMENDS** that his request be **DENIED**.

### 2. *Leg Braces*

Although Plaintiff's original motion only asked for a transfer to a Level III facility he discussed in his complaint issues with his leg braces.  Plaintiff testified that he turned his leg braces in sometime after a fall in August 2015 because they were not fitting properly and he has yet to have them returned.   P.A. Mills testified that she is in the process of setting up an appointment with an outside prosthetics company to set up a fitting appointment for Plaintiff.

The undersigned finds that Plaintiff is not entitled to injunctive relief because he has not shown a likelihood of success on the merits on this claim.   There is no evidence that Defendants are deliberately indifferent in fixing his leg braces.    In fact, the evidence indicates that Defendant Mills is in the process of obtaining either adjustments to Plaintiff's braces or new braces.  The medical records indicate that the first time this current issue with Plaintiff's leg braces was brought to Mills' attention was on October 21, 2015, after Plaintiff filed his complaint in this case.   Mills testified that Plaintiff had turned his braces into the healthcare unit weeks earlier but they were given to an assistant who has since left the healthcare unit.  When Mills learned that the braces were in the healthcare unit and that Plaintiff indicated the braces no longer fit, Mills sought approval for an outside appointment with a prosthetics company for a fitting. That request was approved and Mills testified that she is in the process of obtaining an appointment for a fitting.   The medical records indicate a target date for this appointment of December 16, 2015.   Dr. Kruse also testified that if Plaintiff receives leg

braces that fit properly he may resume with his exercises of using his walker and leg braces to move around the prison complex.

Thus, it appears to the undersigned that the parties are not deliberately indifferent in repairing his leg braces.  Rather, it appears that the issue with the leg braces is a new issue that the Defendants are seeking to remedy.   The undersigned finds no delay in their actions in fixing the leg braces at this time.   Albeit if Plaintiff is denied his leg braces for an extended amount of time, the undersigned's view may change, but at this time the undersigned finds no delay by Defendants in dealing with Plaintiff's faulty leg braces as the request for an outside prosthetics' fitting has been approved and the Defendants are working on scheduling an appointment for that fitting. Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for injunctive relief as it relates to the leg braces.

### 3. *Pain Medication*

The undersigned also finds that Plaintiff has not shown that he is entitled to injunctive relief on his request for pain medication.  Plaintiff argues that he needs different pain mediation because the medication that Defendants have provided is ineffective.   But the undersigned finds that he is not likely to succeed on the merits of this claim because he is not taking the medication as prescribed.   The medical records indicate that Plaintiff has been directed to take his pain medication twice daily. However, Plaintiff does not take his morning dosage.  P.A. Mills testified, and the medical records indicate, that Plaintiff was instructed that the medication will be most

effective if he takes it as prescribed, twice a day.   The undersigned credits P.A. Mill's testimony on this point.   On August 24, 2015 Mills encouraged him to take his morning dosage in order to determine if the pain medication was effective when taken as prescribed.

But Plaintiff has still not taken his pain medication as prescribed.   Records from September 4, 2015, less than two weeks after Mills spoke with Plaintiff, indicate that Plaintiff continued to be noncompliant with his prescription.   He only took his morning dose of Lyrica on two occasions from August 24, 2015.   Further, as of October 21, 2015, Plaintiff was not taking any medication because he did not think that it was helping. He signed a waiver form indicating his refusal to take the pain medication.

Plaintiff wants this Court to order different pain medication, but he has not shown that the medication he was prescribed is ineffective.   The record indicates that Plaintiff has not taken his pain medication as prescribed, so it is impossible for the undersigned to determine that the medication is not working properly.   Plaintiff was instructed to take the pain medication twice daily to determine if the full prescription would control his pain, but Plaintiff did not comply.   The records indicate that he only took the full dose on two occasions.   As Plaintiff refuses to take the medication as prescribed, there is nothing in the record to show that the medication he is taking is ineffective for his pain.    Accordingly, the Court finds that Plaintiff has not shown he is entitled to the relief that he seeks and **RECOMMENDS** that his request for different pain medication be **DENIED**.

CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for injunctive relief.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).   Accordingly, Objections to this Report and Recommendation must be filed on or before **December 3, 2015.**

**IT IS SO ORDERED**.
DATED:   November 16, 2015.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge