IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SYLVESTER CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-0260-MJR-SCW |
| | ) | |
| JAMES N. CROSS, | ) | |
| DR. DOUGLAS KRUSE, and | ) | |
| ELIZABETH MILLS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### A. Introduction and Procedural Background

Plaintiff, an inmate incarcerated at Greenville Federal Correctional Institution ("FCI-Greenville"), filed this *pro se* complaint and motion for preliminary injunction on March 9, 2015 (Doc. 1).[1]  As narrowed by the Court's threshold order pursuant to 28 U.S.C. § 1915A, the complaint articulated a cause of action for deliberate indifference to the Plaintiff's medical needs (Doc. 7 at 5-7).  At present, claims against Defendants Kruse and Mills remain, with Defendant Cross in the action in his official capacity for the purpose of any injunctive relief that the Court determines to be appropriate.

---

[1] The Plaintiff's initial filing, titled "Emergency Motion Requesting Injunctive Relief Regarding Medical Treatment" was construed to include an underlying complaint, based upon the constitutional claims set forth within it (Doc. 7 at 1-2).

Years prior to his incarceration, the Plaintiff was shot, leaving him paralyzed from the chest down and dependent on the use of a wheelchair (Doc. 7 at 2).  As a result, he had received some physical therapy and used leg braces to increase mobility (*Id*.).  Upon entering FCI-Greenville on November 6, 2013, he informed Defendant Kruse and former Defendant Pollman[2] that he needed physical therapy (*Id*. at 3).  FCI-Greenville is a "Care Level II" facility, which cannot provide physical therapy.  According to the Plaintiff, he was told that he would not receive physical therapy at FCI-Greenville, was denied a physical therapy consultation, and his later requests for transfer to a "Care Level III" facility were denied (*Id*.).

Plaintiff has alleged that the Defendants have been deliberately indifferent to his care in three separate ways.  First, Plaintiff alleged that he has requested specific pain medication from Defendant Mills, and has either received no medication, or has not received the medication that he requested (Doc. 7 at 3-4).  Second, Plaintiff stated that he has made numerous requests for transfer to a Care Level III facility, but that Defendant Kruse or former Defendant Pollman either denied transfer or failed to respond (*Id*. at 4).  Finally, Plaintiff claimed that he has made two separate requests for new leg braces, but has received no response.  By virtue of their deliberate indifference, Plaintiff claimed that he has and is suffering irreparable harm (*Id*. at 4).

---

[2] Defendant Pollman was dismissed with prejudice by the Court on November 9, 2015 (Doc. 36).

The Honorable Stephen C. Williams, United States Magistrate Judge, conducted a motion hearing on October 30, 2015 (Doc. 31).  The parties presented evidence related to the Plaintiff's motion for preliminary injunction at that time.  This included extensive testimony by the Plaintiff, discussing his belief that he will need physical therapy for the rest of his life (*see* Motion Hearing Transcript, Doc. 41 at 15).  However, he also acknowledged that he has never been told by a doctor that he needed extensive physical therapy, though he was told by a former physician that it would help with muscle spasms (*Id*. at 15, 17).  He added that he needs to stretch his legs in order to maintain a range of motion, which requires assistance—his requests for assistance have likewise been denied (*Id*. at 16).  Plaintiff noted that he has been unable to exercise since his braces broke in September (*Id*. at 7).  In addition, Plaintiff testified that he has not been received pain medication sufficient to address his pain needs, often resulting only in stomach irritation (*Id*. at 7-11).  After Plaintiff's testimony concluded, the Court received testimony from Defendants Mills and Kruse.  Additionally, the Plaintiff's medical records have been supplied to the Court.

**B.  Report and Recommendation**

Based upon the parties' briefs, testimony during the hearing, and the provided medical records, Magistrate Judge Williams submitted a Report and Recommendations ("R&R"), recommending that the Court deny the Plaintiff's motion for preliminary injunction (Doc. 40).  Specifically, Judge Williams argues that no evidence has been

provided that demonstrates the Plaintiff was entitled to a transfer to a Care Level III facility (*Id.* at 13), and that he is not entitled to injunctive relief as to his leg braces (*Id.* at 15) or pain medication (*Id.* at 16).  The Plaintiff filed an objection to R&R (Doc. 44), to which the Defendants responded (Doc. 45).

Timely objections having been filed, the Court undertakes *de novo* review of the portions to the Report to which Plaintiff specifically objected.  **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b).**  The undersigned can accept, reject, or modify Magistrate Judge Williams' recommendations, receive further evidence, or recommit the matter with instructions.  ***Id.***  For the reasons stated below, the Court **ADOPTS** the R&R and **DENIES** the Plaintiff's motion for preliminary injunction.

**C.  <u>Legal Standards</u>**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." ***Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").**  To secure a preliminary injunction, the movant must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. ***Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010),**

citing *Winter*, **555 U.S. at 20.** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.*, **citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).** *See also W.A. Mack, Inc. v. Gen. Motors Corp.*,

**260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

    **D. <u>Plaintiff's Objections and Defendants' Responses</u>**

Plaintiff's objections consist of two arguments:

    **1. Leg Braces**

Plaintiff first states that, as of the mailing of his objection on November 30, 2015, he has not received new leg braces, despite requesting them in September 2015 (Doc. 44 at 1). He claims that Defendant Mills stated during the hearing that the Plaintiff's leg braces had been sent out for repair. Plaintiff argues that this statement is false, noting an Administrative Remedy response from Defendant Cross, dated November 4, 2015, stating that his leg braces were never sent for repair and that he was being scheduled for an appointment to be evaluated for new leg braces (*Id*. at 1-3). Plaintiff summarizes by saying "[t]he Magistrate's Report and Recommendations is not accurate, and is based on false testimony by the Defendant Ms. Mills" (*Id*. at 2).

Defendants refer to the Ms. Mill's testimony during the October 30, 2015 hearing. Defendant Mills stated that the Plaintiff brought his leg braces to medical rather than to Ms. Mills during sick call (Doc. 41 at 38). Plaintiff told her that the braces were no longer fitting, and Mills put in a request for an evaluation, including either repair or replacement of his braces (*Id*.). She then noted that the request was approved and the appointment was to be scheduled, as noted in the Administrate Response.

2. **Dr. Kruse's Qualifications**

Plaintiff then argues that Dr. Kruse, as a "general practitioner" does not specialize in physical therapy (Doc. 44 at 2).  He claims that "[b]ased upon the Plaintiff's prior medical records, its [sic] clear that the Plaintiff was diagnosed to have physical therapy based on his condition" (*Id.*).

Here again, Defendants point to hearing testimony, this time from Defendant Kruse.  Dr. Kruse noted that he was a family practice physician with fifteen years of experience, including nearly four years at FCI-Greenville (Doc. 44 at 41-42).  Dr. Kruse stated that he evaluated the Plaintiff upon his arrival at the facility and determined that, with eight years having elapsed since his injury, physical therapy would not benefit the Plaintiff (*Id.* at 43-44).  He added that physical therapy was designed to help individuals regain function (which he did not feel was possible so long after Plaintiff's injury) or to prevent contractures (which Plaintiff did not suffer from) (*Id.* at 44-45).  Despite this, he submitted a transfer request on this basis to get a "second opinion," but the request was denied (*Id.* at 43, 46).  Dr. Kruse noted that, should Plaintiff's condition change, he would be more than willing to submit a transfer request on the Plaintiff's behalf to a Care Level III facility (*Id.* at 42, 45).  On cross examination by the Plaintiff, Defendant Kruse noted that his training, specifically as to musculoskeletal and neurological conditions, made him qualified to diagnose the Plaintiff (*Id.* at 49-50).

### E.  Analysis

The Court notes at the offset that the Plaintiff made no objection as to his requests for pain medications, and therefore the Court **ADOPTS** the R&R as to this issue without further review.  Plaintiff's objection as to his leg braces is without merit. While he has claimed that Defendant Mills provided false testimony during the hearing, the transcript and Plaintiff's own exhibit demonstrate the contrary – Defendant Mills acted to either repair or replace the Plaintiff's leg braces, and this request was approved by Defendant Cross.  Whether the evaluation and subsequent provision of new leg braces has occurred is outside the Court's record, but it is sufficient to demonstrate that the Defendants are actively working to repair or replace the leg braces and are thus not indifferent.  The Court **REJECTS** Plaintiff's objection and **ADOPTS** the R&R as to the leg braces.

Plaintiff has also requested to be transferred to a Care Level III facility.  Dr. Kruse did not feel that a transfer on the basis of needing physical therapy[3] was justifiable for the Plaintiff at the time of his initial evaluation, based upon the time between his gunshot wound and his evaluation at FCI-Greenville, and has not changed his medical opinion.  Dr. Kruse added that the Plaintiff lacked symptoms of muscle tightening and notes that he is able to straighten his leg fully—two other conditions which could justify

---

[3] In addition to his desire to be transferred because of his desire for physical therapy, the Plaintiff also requested a transfer because of a pressure sore.  Dr. Kruse filed a transfer request for this, but it was denied.  The sore has since healed, and thus injunctive relief on this basis is moot, and will not be considered by the Court.  (Doc. 40 at 11-12).

physical therapy.  The Plaintiff does not feel that Dr. Kruse possesses the necessary training or education to properly evaluate his condition, but does not provide a basis for this other than his own opinion.  Moreover, Dr. Kruse himself, in an abundance of caution, submitted the transfer request on this basis, but it was denied by the Bureau of Prisons medical designations officer (Doc. 41 at 46).  In short, the Plaintiff has not provided a basis for why he would benefit from physical therapy and thus would need to be transferred to a Care Level III facility.  Obviously, this could change in the future (as Dr. Kruse noted), but at this time, the Court **REJECTS** Plaintiff's objection and **ADOPTS** the R&R as to the Plaintiff's requested transfer.

F.  <u>Conclusion</u>

Based upon the above arguments, the Court **REJECTS** Plaintiff's objections (Doc. 44), **ADOPTS** the R&R in its entirety (Doc. 40), and **DENIES** the Plaintiff's request for injunctive relief.  Further, as Defendant Cross was only maintained in the suit to allow for any injunctive relief which the Court might grant, Defendant Cross is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED:      <u>**January 8, 2016**</u>

<u>*s/ Michael J. Reagan*</u>
Michael J. Reagan
Chief Judge
United States District CourtG